**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**ERICK PEREZ PALACIOS**

**VS.**

**SHAD RICE, ET AL.**

**CIVIL ACTION NO. 26-1134**

**SECTION P**

**JUDGE TERRY A. DOUGHTY**

**MAG. JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Petitioner Erick Perez Palacios,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 10].  For reasons that follow, the Court should grant the petition in part as described below.

## Background

Petitioner is a citizen of Ecuador.  [doc. # 1, p. 1].  "Petitioner initially entered the United States without inspection in September 2023, at age 17."  *Id.* at 2.  " He was apprehended by Customs and Border Patrol ('CBP') on September 9, 2023 and

---

[1] Petitioner's "A Number" is 241-310-942.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

processed as an unaccompanied minor." *Id.* "He was taken into immigration custody and transferred to the Office of Refugee Resettlement ('ORR') pursuant to the Trafficking Victims Protection Reauthorization Act ('TVPRA'), 8 U.S.C. § 1232. [] He was released on or around October 3, 2023 by ORR to his aunt who lives in New Jersey." [doc. #s 1, p. 2; 1-3, pp. 2-3].

"On June 10, 2025, Petitioner was apprehended by ICE on his way to work in Rahway, New Jersey." [doc. # 1, p. 2]. "Petitioner has since been detained by ICE at CLIPC and has never had a bond hearing conducted by a neutral decisionmaker— a federal judge or an immigration judge—to determine whether his detention is warranted based on danger or flight risk." *Id.*

On November 13, 2025, an immigration judge ordered Petitioner removed to Ecuador. [doc. #s 1, p. 7; 1-6, p. 4]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); his appeal is pending. [doc. #s 1, p. 7; 1-7].

Petitioner filed this proceeding on April 9, 2026. [doc. # 1]. He first claims: "Because [he] was released from ORR custody after being designated an unaccompanied child, § 1225(b) does not govern his detention. Therefore, his detention under that section is unlawful, and release is appropriate." [doc. # 1, pp. 9, 26]. He contends, "Since the petitioners in *Buenrostro-Mendez* were adults when they entered the United States the Fifth Circuit did not address this issue and its

reasoning does not bind this Court in this case." *Id.* at 9-10.  Next, Petitioner claims that ICE violated his right to procedural due process by failing to provide him a bond hearing when it re-detained him.  [doc. # 1, pp. 12, 27]. Finally, Petitioner contends that his detention without a bond hearing violates substantive due process.  [doc. # 1, pp. 15, 28].  Petitioner seeks, *inter alia*, release from custody or, in the alternative, a "bond hearing within 10 days at which the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present[.]"  [doc. # 1, p. 29].

Respondents opposed the petition on May 26, 2026.  [doc. # 10].  They contend: (1) that the TVPRA does not apply to Petitioner, and he is properly detained under 8 U.S.C. § 1225; (2) Petitioner's mandatory detention under Section 1225 does not violate procedural due process; and (3) Petitioner's detention does not violate substantive due process.  *Id.* at 3-9.  Petitioner filed a reply on June 2, 2026.  [doc. # 11].

## Law and Analysis

Petitioner claims that mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2) is incompatible with the TVPRA, which is codified at 8 U.S.C. § 1232.  [doc. # 1, p. 2].  The Government disagrees, arguing that the TVPRA does not govern Petitioner's detention and that, therefore, under *Buenrostro-Mendez v.*

*Bondi*, 166 F.4th 494 (5th Cir. 2026), Petitioner is detained under Section 1225 and is not entitled to a bond hearing or release.

Petitioner argues:

35. Because [he] was released from ORR custody after being designated an unaccompanied child, § 1225(b) does not govern his detention. Therefore, his detention under that section is unlawful, and release is appropriate. *See Garcia Sandoval v. Rokosky*, 2025 WL 3204746, at *2 (D.N.J. Nov. 17, 2025). Since the petitioners in *Buenrostro-Mendez* were adults when they entered the United States the Fifth Circuit did not address this issue and its reasoning does not bind this Court in this case. 166 F.4th at 498.

. . . .

37. When unaccompanied children are encountered by immigration officials, the TVPRA directs special treatment given their status as unaccompanied children. *See generally* 8 U.S.C. § 1232. As relevant to this case, ORR (which is part of the U.S. Department of Health and Human Services), and not ICE, is the entity responsible for caring for such children. *See generally id*.

38. Section 1232 further requires that ORR place unaccompanied children in "the least restrictive setting that is in the best interest of the child," taking into account danger to self, danger to community, and risk of flight. 8 U.S.C. § 1232(c)(2)(A) (incorporating 6 U.S.C. § 279(b)(2), which requires ORR to "ensure" that under such custody determinations children are likely to appear for immigration proceedings and are unlikely to pose a danger to themselves or others). ORR's options for releasing unaccompanied children from custody include placement with family or another sponsor.

39. Once a person has been designated an unaccompanied child and detained pursuant to § 1232 they cannot be subject to § 1225 detention, even after they turn 18. Section 1232(c)(2)(B), which governs the release of unaccompanied children when they "age out" (i.e. turn 18 while still in ORR custody), requires that ICE "consider placement in the least restrictive setting available" and that these

4

adults "shall be eligible for alternatives to detention." 8 U.S.C. §1232(c)(2)(B); *see Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 28 (D.D.C. 2018) (rejecting argument that unaccompanied minor aging out of ORR is not entitled to consideration under § 1232(c)(2)(B), despite the government's position that she was subject to mandatory detention under § 235, and explaining "[n]othing in the text or context supports Defendants' argument that only a subset of former unaccompanied minors who were transferred to DHS custody are entitled to consideration under 8 U.S.C. § 1232(c)(2)(B)").

40. The TVPRA continues to govern detention of UACs even if they age-out following release to a sponsor in the United States:

> ORR retained legal custody of Petitioner throughout his sponsored release. Petitioner was thus in ORR legal custody up until the day he was re-detained by ICE, at which point Petitioner's custody was effectively transferred from ORR to ICE, which triggered the requirement under Section 1232(c)(2)(B) that ICE conduct an assessment of the "least restrictive [custodial] setting" for Petitioner. 8 U.S.C. § 1232(c)(2)(B).

*R.A.R.R. v. Almodovar*, No. 25- 6597, 2026 WL 323040 at *6 (E.D.N.Y. Feb. 6, 2026); *see also Arevalo Lopez v. Sessions*, No. 18-4189, 2018 WL 2932726 at *9 (S.D.N.Y. June 12, 2018) ("The protections of Section 1232(c)(2)(B) therefore extend beyond those over whom the HHS exercises physical custody; they apply to UACs who turn eighteen while in the legal custody of the HHS and on release pursuant to sponsorship agreements.").

41. The TVPRA release standard is plainly inconsistent with mandatory detention under § 1225(b). This inconsistency demonstrates Congress's clear intent to exclude former unaccompanied children from § 1225. Section 1232(c)(2) would be rendered a nullity if these former unaccompanied children were subject to mandatory detention when they became adults. The more general § 1225 provision, which predated the TVPRA, is displaced by the more specific. *See Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific

5

statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").

42. Thus, even under *Yajure Hurtado and Buenrostro-Mendez*, Congress provided that the TVPRA supplants § 1225(b) once an unaccompanied minor is transferred to ORR, processed under that statute, and eventually released from ORR. *See Torres v. Wamsley*, No. 25-5772, 2025 WL 2855379, at *3–5 (W.D. Wash. Oct. 8, 2025); *R.D.T.M. v. Wofford*, No. 25-1141, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025); *Arevalo Lopez*, 2018 WL 2932726, at *6.

[doc. # 1, pp. 9-12].

The undersigned agrees that 8 U.S.C. § 1232 governs Petitioner's detention.

Section 1232(c)(2)(A)-(B) states in relevant part:

(A) Subject to section 279(b)(2) of Title 6, an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child.

. . . .

(B) If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

With respect to subparagraph (B) above, Respondents do not dispute that Petitioner was a minor "described in subparagraph (A)" who "reache[d] 18 years of age" and was "transferred to the custody of the Secretary of Homeland Security[.]"

6

Accordingly, the Secretary "*shall* consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." *See id.* (emphasis added).

Respondents argue that the "text plainly says that individualized assessment applies only at the point where a minor 'reaches 18 years of age and is transferred to' DHS." [doc. # 10, p. 4].  They argue further:

> Section 1232(c)(2)(B)'s "age-out" provision does not create a permanent right to an individualized bond redetermination whenever an alien who was formerly a UAC is arrested by ICE well after reaching the age of majority. Rather, its plain terms apply only during the critical time period when UACs become adults and are "transferred" from ORR to the "custody" of DHS. The statute is silent on what happens years later after UACs are no longer in DHS custody, have not yet been "safely repatriated to their country of nationality or of last habitual residence"—as the TVPRA presumes they generally will be, 8 U.S.C. § 1232(a)(1)—and have instead applied for asylum as an adult.

*Id.*

The undersigned disagrees.  The relevant provision uses the term "*If.*"  It does not use the term "when" or the phrase "at the moment."  It states, "*If* a minor . . . reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall . . . ."  In addition, the provision does not state that it applies "only" at the precise moment a minor reaches 18 and is transferred to DHS.  Likewise, it does not state that it applies, as Respondents state, "during the critical time period when UACs become adults and are 'transferred'" to

DHS custody.  [doc. # 10, p. 4].  To reiterate, it states that "*if*" Petitioner reaches 18 years of age—he did—and *if* he is transferred to the custody of DHS—he was—then the Secretary *shall* consider placing him in the least restrictive setting available.  As one court reasoned, "Grammatically, the consideration of least restrictive placement required by the statute only occurs once the conditional requirements of the antecedent clause are met—that is, when the UAC reaches the age of 18 and custody is transferred."  *Marroquin Alvarez v. Genalo*, 2026 WL 1206212, at *7 (S.D.N.Y. May 4, 2026); *see R.A.R.R. v. Almodovar*, 2026 WL 323040, at *8 (E.D.N.Y. Feb. 6, 2026).

Respondents next argue that Petitioner is not entitled to "special immigrant status" because he did not apply for asylum before he reached age 18.  [doc. # 10, pp. 4-5].  Petitioner, however, does not claim entitlement to special immigrant status.

Respondents argue next: "Since §1232(c)(2)(b) no longer applies to him, there is no statutory basis to hold that he does not fall within the plain meaning of 'applicant for admission,' and is subject to mandatory detention pursuant to the Fifth Circuit's ruling in *Buenrostro-Mendez*."  [doc. # 10, p. 5].  Respondents, in other words premise their argument that Petitioner is detained under Section 1225 pursuant to *Buenrostro-Mendez* on their argument that Section 1232 does not apply to Petitioner.  Above, however, the undersigned finds that Section 1232 does apply.

Further, *Buenrostro-Mendez* did not address the issue at bar (namely, noncitizens who entered the United States as unaccompanied minors).

The undersigned agrees with Petitioner that he "cannot be subjected to mandatory detention under 8 U.S.C. § 1225(b) because he entered the United States as an unaccompanied child and the protections of 8 U.S.C. § 1232(c)(2) still apply." [doc. # 11, p. 3]. "Courts across the country, when faced with this question, concur that Section 1225(b)(2)(A) and Section 1232(c)(2)(B) establish 'mutually exclusive' detention schemes." *Marroquin Alvarez v. Genalo*, No. 26-CV-02250 (JAV), 2026 WL 1206212, at *6 (S.D.N.Y. May 4, 2026) (citing cases); *see also P.A.H.E. v. Noem*, No. 26-CV-1164 (DJC) (JDP), 2026 WL 451662, at *1-2 (E.D. Cal. Feb. 17, 2026) ("These statutes are thus plainly incompatible as one mandates detention while the other requires placement in the least restrictive setting and contemplates placement in a variety of release programs.").

Section 1232(c)(2) controls because it is a more specific statute and inconsistent with Section 1225(b). *See U.S. v. Lewis*, 211 F.3d 932, 934 (5th Cir. 2000) (finding that where a more specific statute conflicts with a more general statute, the more specific statute controls); *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) ("[I]t is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated

and closely positioned."); *accord RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012).

The Court should order the Secretary of Homeland Security to consider placing Petitioner in the least restrictive setting available after taking into account Petitioner's danger to self, danger to the community, and risk of flight, if any. 8 U.S.C. 1232(c)(2)(B). In addition, Petitioner is eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on his need for supervision, which may include placing him with an individual or an organizational sponsor, or in a supervised group home. *Id.*

## **Recommendation**[3]

For the reasons above, **IT IS RECOMMENDED** that Petitioner Erick Perez Palacios's petition be **GRANTED IN PART AND DENIED IN PART**. To the extent he seeks relief under 8 U.S.C. § 1232(c)(2)(B), his petition is **GRANTED**: (I) the Secretary of Homeland Security shall, within **ten (10) days**, conduct a hearing and consider Petitioner's placement in the least restrictive setting available after taking into account any danger to self, danger to the community, and risk of flight; and (II) Petitioner shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on any need for supervision, which may

---

[3] The undersigned finds no need to address any claim or request for relief not addressed herein.

include placement of Petitioner with an individual or an organizational sponsor, or in a supervised group home. Respondents shall provide Petitioner adequate notice of the hearing. The parties shall file a joint status report within 48 hours after the hearing, confirming that the hearing was conducted and informing the Court of the result.

**IT IS FURTHER RECOMMENDED** that if the Secretary of Homeland Security does not provide the relief above within ten (10) days, Respondents shall release Petitioner from custody in accordance with any terms and conditions of his prior release, without any additional bond requirements or new conditions.

**IT IS FURTHER RECOMMENDED** that to the extent Petitioner seeks other relief not granted above, his petition is **DENIED**.

In Chambers, Lafayette, Louisiana, this 9th day of June, 2026.

Carol B. Whitehurst
United States Magistrate Judge